(864 P.2d 738)
No. 68,386

KATHIE J. LOCKS, *Appellee*, v. BOEING COMPANY—WICHITA and
AETNA CASUALTY & SURETY COMPANY, *Appellants*.
Petition for review denied 253 Kan. 859 (1993).

Opinion filed July 16, 1993.

*Frederick L. Haag* and *Stephen M. Kerwick*, of Foulston & Siefkin, of Wichita, for appellants.

*Kelly W. Johnston*, of The Johnston Law Offices, P.A., of Wichita, for appellee.

Before GERNON, P.J., PIERRON, J., and PAUL E. MILLER, District Judge, assigned.

GERNON, J.: This is a workers compensation appeal. The issues we must address involve the statutory presumption against work

disability for workers engaged in any work for comparable preinjury wages.

Kathie Locks works at the Boeing Company—Wichita (Boeing). She began work in the deburr shop and, later, transferred to the stringer fabrication department, where she worked with heavy tools and parts.

Locks began to complain of arm and shoulder pain in the late summer of 1989. This pain caused her absence from work from September 1989 through July 1990. Locks returned to work, still in pain, continued to have contact with physicians, and was off work again from September 1990 to November 1990. She returned to work but was assigned to the "work pool," a department set up for employees with work restrictions.

Locks was seen by a variety of physicians and at least two vocational economists during the course of her injury and treatment. She finally was referred to Dr. George Lucas of the Wichita Clinic, P.A., and Dr. Robert Eyster of Orthopedic & Sports Medicine of Wichita, Inc. Her attorney also referred her to Dr. Ernest Schlachter.

Dr. Lucas concluded Locks had an impairment of 5% to her right upper extremity. Dr. Kenneth Zimmerman, a staff physician at Boeing, diagnosed overuse syndrome and tendinitis, gave Locks a 5% disability rating for the right upper extremity, and converted this finding to a 3% overall body impairment rating. Dr. Eyster concluded Locks suffered from overuse syndrome and tendinitis but also concluded she had no permanent impairment. Dr. Schlachter diagnosed Locks' pain as overuse syndrome of both upper extremities and concluded she had an 11% overall impairment.

Locks' vocational economist determined her loss of access to the Wichita labor market at 81%. Boeing hired a vocational economist who determined Locks' loss of labor market access to be 46%.

The parties stipulated that, at the time of the injury, Locks was earning $12.46 per hour, and that, as of May 8, 1991, she was earning $13.89 per hour.

The administrative law judge (ALJ) averaged the doctors' conclusions and found that Locks had a 3% permanent overall body impairment and awarded her payment of medical expenses and

$18,343.14 total compensation. The ALJ found that there was not a preponderance of evidence that Locks suffered a work disability or that she had overcome the presumption in K.S.A. 1992 Supp. 44-510e(a). However, the ALJ did not address the testimony of the vocational economists. There was no petition for Director's review.

The district court reviewed the record and adopted the ALJ's findings, with the exception of a paragraph on work disability. The district court averaged the ratings of both vocational economists to find a loss of labor market access of 63.5% and accepted the determination of Locks' vocational economist concerning an expected loss of ability to earn a comparable wage of 28%. The district court then averaged these, following *Hughes v. Inland Container Corp.*, 247 Kan. 407, 799 P.2d 1011 (1990), to find a work disability of 45.5%. The award then totaled $69,464.78. Boeing appeals.

*Was the trial court's test for rebuttal of the presumption against work disability correct as a matter of law?*

K.S.A. 1992 Supp. 44-510e(a) states: "There shall be a presumption that the employee has no work disability if the employee engages in any work for wages comparable to the average gross weekly wage that the employee was earning at the time of the injury."

In an appeal from the district court in a workers compensation case, an appellate court may substitute its judgment on questions of law. On disputed issues of fact, the scope of review by an appellate court is to determine whether the district court's judgment is supported by substantial evidence. The evidence is viewed in the light most favorable to the party prevailing below, and, if substantial evidence supports the district court's factual findings, the appellate court does not reweigh the evidence or reverse the final order of the district court. *Reeves v. Equipment Service Industries, Inc.*, 245 Kan. 165, 173, 777 P.2d 765 (1989). See *Hughes v. Inland Container Corp.*, 247 Kan. at 410.

The district judge stated in his memorandum opinion:

"The presumption of no work disability pursuant to K.S.A. 44-510e(a) has been overcome by the persuasive impact of the two expert witnesses just discussed. The loss of work disability is very real and very substantial. That

is the test to overcome the presumption. Claimant has carried her burden of proof in that particular."

Boeing argues that the court did nothing to explain what was real or substantial about Locks' loss or to explain the test. However, a valid explanation is contained in the two paragraphs preceding the above quote. The court adopted the approach from *Hughes* and averaged Locks' loss of labor market access with her loss of ability to earn a comparable wage.

"This Court's analysis of the testimony of Don Vogenthaler combined with the testimony of Karen Terrill, another expert on the same subject, is that foundation is present and credible. The Court believes it appropriate in this case to average the conclusions of those two expert witnesses arriving at their conclusions from different perspectives. Mr. Vogenthaler makes the determination of 81% loss of ability to perform work in the open labor market. Ms. Terrill makes a finding of 46%. The average is 63.5%, which figure the Court adopts as the percentage of loss of Claimant's ability to perform work in the open labor market.

"The Court finds the expert assessment of Don Vogenthaler to be correct in evaluating the loss of ability of Claimant to earn a comparable wage to be 28%. The Court also believes the approach used in the case of *Hughes v. Inland Container Corp.*, 247 Kan. 407 is appropriate in this instance. Specifically, the Court finds the facts of this case such that equal weight is given to the two losses of ability to perform work in the open labor market and ability to earn a comparable wage. Averaging those two figures found by the Court, yields a work disability percentage of 45.5% which the Court makes the finding and Order of the Court."

While this approach is not the only method available to determine a claimant's loss, it was approved by the Supreme Court in *Hughes*, 247 Kan. at 422. Therefore, the district court did not err in adopting this analysis to determine Locks' work disability. Despite Boeing's contention, the court did not find Locks to be minimally injured.

Boeing's contention that the district court gave no real significance to the presumption is an argument over the facts of the case. K.S.A. 60-413 states that a presumption is an assumption of fact resulting from a rule of law. Jones on Evidence, cited by Boeing, also discusses rebuttable presumptions. "By far the greater number of presumptions belong to the class known as disputable or rebuttable presumptions—that is to say, presumptions which arise and continue until they are overcome by evidence or by some stronger presumption." 1 Jones on Evidence

§ 3:4 (6th ed. 1972). The question of whether the presumption was overcome by evidence then is a question of fact, and the standard of review for a question of fact is to determine whether the district court's judgment is supported by substantial evidence.

Boeing recognizes that evidence of a temporary job with comparable wages which will fall off in the future might rebut the presumption. The job position Locks currently occupies is a temporary assignment due to her medical restrictions. There is no evidence that she will be able to return to her position as a bench mechanic. Boeing also concedes that an ongoing progressive health problem which would make employment transitory would make a good argument on rebuttal. Locks' disability is described by all the doctors as an ongoing progressive health problem.

*Was it error to consider opinion testimony based on computer generated analyses?*

Boeing contends that the computer program is biased and not objective. Our role is to determine if the district court's conclusion is supported by substantial evidence. See *Monroe v. General Motors Corp.*, 13 Kan. App. 2d 460, 464, 773 P.2d 683, *rev. denied* 245 Kan. 785 (1989).

Boeing's reference to *West v. Martin*, 11 Kan. App. 2d 55, 59-60, 713 P.2d 957, *rev. denied* 239 Kan. 695 (1986), is misplaced. *West* was a personal injury case, originating in a district court, with stricter rules concerning the admissibility of evidence than in an administrative hearing. See *Box v. Cessna Aircraft Co.*, 236 Kan. 237, 243-44, 689 P.2d 871 (1984). Also, in *West*, the computer "test" was interpreted by someone other than the one administering the test.

Here, the individual who testified ran the computer evaluation and did the analysis and interpretation.

Boeing's objection at trial centered on the fact that the person who testified did not create the program. If this argument was accepted, the creator of a program would be required to testify every time testimony was given based on data analysis generated by that program. This standard would be more stringent than the one which controls admissibility of expert opinion in civil trials. See *Boeing Military Airplane Co. v. Enloe*, 13 Kan. App. 2d 128, 131, 764 P.2d 462 (1988), *rev. denied* 244 Kan. 736 (1989).

K.S.A. 60-456(b) states:

"If the witness is testifying as an expert, testimony of the witness in the form of opinions or inferences is limited to such opinions as the judge finds are (1) based on facts or data perceived by or personally known or made known to the witness at the hearing and (2) within the scope of the special knowledge, skill, experience or training possessed by the witness."

"The test to be applied when a claim is made that evidence was erroneously admitted in a workers' compensation proceeding is whether 'the decision is based upon substantial and satisfactory evidence, relevant, reasonable and persuasive, though not technically admissible under the rules of evidence.' " 13 Kan. App. 2d at 131. Locks' vocational economist's testimony was properly admitted into the record, as was the testimony of Boeing's economist. Given the standard of review, a thorough evaluation of the record reveals substantial evidence to support the district court's decision.

Affirmed.